# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

Joshua D. Lambert, Doc # 807036,
*Plaintiff's full name and prisoner number*

Plaintiff,

v.

Xlomara Huertas, et. al.
(See attached for
additional names)
*Defendant's/defendants' full name(s)*

Defendant(s).

(If you cannot fit all of the defendants' names
in the space provided, please write "see
attached" in the space above and attach
additional sheets of paper, as necessary, with
the full list of names. The names listed here
must be identical to those in Section II. Do not
include addresses here. **Individuals whose
names are not included in this section will
not be considered defendants in this action.**)

Case No. 3:19-cv-05980-RJB-JRC
(leave blank – for court staff only)

SECOND AMENDED
**PRISONER CIVIL RIGHTS
COMPLAINT**

Jury Demand?
□ Yes
□ No

## WARNINGS

1. Do not use this form if you are challenging the validity of your criminal conviction or
your criminal sentence. If you are challenging your conviction or sentence, or if you are seeking
restoration of good-time credits that would shorten your sentence, you must file a Petition for
Writ of Habeas Corpus. If you use this form to challenge your conviction or sentence, you risk
having your claim dismissed. Separate forms are available for filing a habeas petition.

2. Under the Prison Litigation Reform Act ("PLRA"), you are required to exhaust all
remedies in your institution's grievance system that are available to you before filing suit. This
generally means that you must file a grievance and, if it is denied, appeal it through all available
levels of review. Your case may be dismissed if you fail to exhaust administrative remedies,
unless the administrative grievance process was not "available" to you within the meaning of the
PLRA. You are not required to plead or show that you have exhausted your claim in this
complaint.

Pg 1

Defendants' Names for Caption:

Xlomara Huertas
Natasha House
Western State Hospital
Dr. Ray Hendrickson, Ph.D
Dr. Rhana Kahn, M.D.
James Palmer
Melvin Hopkins        — four previous John Does
Roy Gonzalez
Tracy Schneider
State of Washington
Melinda Tuggle
Lee Stemler
Jack Warner

3.    Please review your complaint carefully before filing. If your case is dismissed, it may affect your ability to file future civil actions while incarcerated without prepaying the full filing fee. Under the PLRA, a prisoner who has had three or more civil actions or appeals dismissed as frivolous, malicious, or for failure to state a claim cannot file a new action without first paying the full filing fee, unless the prisoner is in imminent danger of serious bodily injury.

4.    Under Federal Rule of Civil Procedure 5.2, papers filed with the court, including exhibits or attachments to a complaint, may not contain certain information, which must be modified as follows:

Do not include:
- a full social security number
- a full birth date
- the full name of a minor
- a complete financial account number

Instead, use:
→ the last four digits
→ the birth year
→ the minor's initials
→ the last four digits

5.    You may, but do not need to, send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint. Any documents you submit *must relate directly to the claims you raise in this lawsuit.* They will become part of the court record and *will not be returned to you.*

---

# I.    PLAINTIFF INFORMATION

Lambert, Joshua, D.
Name (Last, First, MI)

Aliases/Former Names

807036
Prisoner ID #

Washington State Penitentiary
Place of Detention

1313 N. 13th Ave.
Institutional Address

Walla Walla, Walla Walla, WA    99362
County, City          State          Zip Code

*Indicate your status:*

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee

☐ Convicted and sentenced state prisoner
☐ Convicted and sentenced federal prisoner

## II. DEFENDANT INFORMATION

*Please list the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint. Make sure that the defendant(s) listed below are identical to those contained in the caption on the first page of the complaint. Attach additional sheets of paper as necessary.*

Defendant 1: Xlomara Huertas
Name (Last, First)

Western State Hospital, Records Analyst
Current Job Title

9601 Steilacoom Blvd., S.W.
Current Work Address

Pierce County, Tacoma, WA 98498-7213
County, City          State          Zip Code

Defendant 2: Natasha House
Name (Last, First)

DSHS B Public Records Officer
Current Job Title

PO Box 45135
Current Work Address

Thurston County, Olympia, WA 98504-5135
County, City          State          Zip Code

Defendant 3: Western State Hospital
Name (Last, First)

State mental hospital
Current Job Title

Same as defendant # 1
Current Work Address

_____
County, City          State          Zip Code

Defendant 4.  Dr Ray Hendrickson, Ph.D
            WSH Forensic Psychologist
            (address same as #1)

Defendant 5.  Dr. Rdnana Kahn, M.D.
            WSH Forensic Psychiatrist
            (address same as #1)

Defendant 6.  Roy Gonzalez
            DOC Headquarters person
            (address DOC headquarters
            in Tumwater or Olympia, WA
            Thurston County)

Defendant 7.  Tracy Schneider
            DOC Headquarters person
            (address same as #6)

Defendant 8.  James Palmer
            MCC-SOU mailroom
            PO Box 514
            Snohomish County, Monroe WA

Defendant 9.  Melvin Hopkins            98272
            MCC-SOU mailroom
            (address same as #8)

Defendant 10.  Lee Stemler
            MCC-SOU Grievance Coordinator
            (same address as #8

Defendant 11. State of Washington
State
(address unknown)
Defendant 12. Melinda Tuggle
MCC-SOU mailroom
(address same as #8)
Defendant 13. Jack Warner
MCC-SOU Superintendent
(address same as #8)

## III.   STATEMENT OF CLAIM(S)

*In this section, you must explain what you believe each defendant did to violate your civil rights, and if you know, identify the federal statutory or constitutional right you believe was violated.*

*If you believe the defendant(s) violated your civil rights in more than one way, explain each violation under a different count. For example, if you believe you received constitutionally inadequate medical care and your religious rights were substantially burdened, include one claim under "Count I" (i.e., medical) and the other claim under "Count II" (i.e., religion).*

*Number your paragraphs. For example, in Count I, paragraphs should be numbered 1.1, 1.2, 1.3, etc., and in Count II, paragraphs should be numbered 2.1, 2.2, 2.3, etc. The first two paragraphs of each Count have been numbered for you.*

*If you have more than three counts, attach additional pages and follow the same format for each count.*

*If you attach documents to support the facts of your claim(s), you __must__ specify which portion of the document(s) (i.e., page and paragraph) you are relying on to support the specific fact(s) of your claim(s). __If you do not specify the portion of the supporting document(s), the Court may disregard your document(s).__*

### COUNT I

*Identify the first right you believe was violated and by whom:*

1.1    See following pages

*State the __facts__ of your first claim below. Include all the facts you consider important. Be specific about dates, times, locations, and the names of the people involved. Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong. If you need additional space, you may attach extra sheets.*

1.2

# III. STATEMENT OF CLAIMS

## COUNT 1

1.1. My right to free speech was violated because my medical records from Western State Hospital medical records person(s) to me were censored by, withholding them from me, by the WSH's public records person Xlomara Heurtas.

1.2. In a letter dated and signed by Heurtas, August 30, 2017, Heurtas wrote that Heurtas recieved medical records of mine from the medical records department and indicated that Heurtas was censoring them from me.

1.3. Heurtas did not have a legitimate governmental interest because the State statute provides the only ~~interst~~ interests that a person in Washington can be denied access to their own records, and none of these ~~reasons~~ reasons were claimed. RCW 70.02.090, and 70.02.080(e).

1.4. Heurtas did not have a legitimate governmental interest because I provided multiple medical confidentiality waivers. Heurtas didn't complain about or address the quality of these waivers, nor did Heurtas tell me to use a specific form. I had drafted the ~~waivers myself and they addressed everything they~~

waivers myself and they addressed everything
they were required to by RCW 70.02.030(3).
(Also, I do not believe the law requires me to
sign a waiver to access my own medical records,
but I did as extra precaution so as to
hopefully of gotten the records right away.)

    1.5. There are no other facts that could
be construed as a legitimate governmental interest.

    1.6. I have suffered physical deprivation of
the records themself. And the time to use them
with my mental health treatment. And an uncalculated
photocopy and portage cost.

## COUNT 2

    2.1. My right to free speech was also
violated by Natasha House DSHS Public Records
Officer because she censored the same medical
records in Count 1.

    2.2. After WSH censored the above records I
contacted DSHS to appeal that decision. Ms. House
is the entity that processed my request. In
letters dated 8/13/18, 8/24/18, and 9/8/18 she
censored these particular medical records — that
were information from WSH medical records

department to me — while not censoring other
information (to wit: 637 pages of emails).

2.3. House did not have a legitimate
government interest to censor my own medical
records for the same reasons in Count 1 at
paragraphs 1.3; 1.4; and 1.5. Additionally, Ms.
House did not provide reason for the censorship.
censorship.

2.4. Also, there was no legitimate
governmental reason to censor some of the
records but not the others.

2.5. I suffered the same injury as
Count 1, paragraph 1.6.


## Count 3

3.1. Both Heurtas and House violated my
right to equal protection of the law as a class
of one for intentionally treating me differently from
others similarly situated without a rational basis.
They did not apply the non-discretional medical records
statute to me equally. RCW 70.02.080, and .090 (and
perhaps related statutes).

3.2. On the same dates in Count 1, at
1.2 (Heurtas, Aug. 30, 2017), and Count 2,

at 2.2 (House, 8/13/18; 8/24/18; and 9/18/18), was when this discrimination occurred because that is the dates they signed their letters.

3.3. SIMILARLY SITUATED. I am similarly situated to others that are permitted access to their own medical records, because:

(i) The statute RCW ~~70.02~~ 70.02 applies to all persons in Washington. I'm in Washington, thus I ~~fit~~ fit the relevant attributes.

(ii) The statute applies to inmates in Washington, thus, I am not excluded from ~~the~~ that. This is clearly established in State caselaw. I also am aware of this from multiple dealings in obtaining and viewing my medical records in the prisons.

(iii) The statute applies to Western State Hospital. These records were from WSH. Additionally, Disability Rights Washington, Alexa Polaski, Staff Attorney, told me this ~~t~~ statute applies to WSH, so discovery should prove this.

(iv) Ms. Polaski sent me a copy of WSH policy that indicates that patients may review and copy their own records, and these records are from when I was a patient there in 2012

for two weeks.

(v) Inmates similarly situated to me can get their own medical records from WSH because my neighbor (three cells down), Ron Chenette, got his forensic psychiatric reports from WSH, I seen the letter was dated July 29, 2019, and it also said that they had sent those same records to him in 2017, and that if he wanted them again he would need to pay for copies. I too was seeking my forensic reports, from 2012. Thus, inmates can get their records from prior stays at WSH, and regarding their forensic reports.

(vi) In addition to the statute applying to me and those similarly situated, patients and ex-patients enjoy the treatment of being able to obtain their own medical records from WSH because WSH provides them to those similarly situated to me, irregardless of the statute interpretation. I am similarly situated because I am an ex-patient seeking my forensic psychiatric records, and inmates receive them from WSH upon their request (as in n. V above).

(vii) I don't have any material dissimilarities from all other patients or former patients, thus,

pg 12

I'm similarily situated to others that enjoy the benefit of access to their own medical records.

(viii) In the past I've spoken with other inmates who have gotten medical records from WSH. So, discovery should provide more evidence that I am similarly situated. I have gotten medical records from WSH at a prior time in 2012, So, I know they provide them.

(ix) I received a letter from Staff Attorney, Alexa Polaski, from Disability Rights Washington, dated 4/13/18, where she stated that that she called WSH and they informed her that inmates could get records (thus I'm similar) because her letter states she called them and they told her I could send a request for my mental health reports by writing to the Public Records mailbox. Thus, WSH admits that similar persons (i.e. inmates that are former WSH patients) can obtain their own mental health records.

(X) There is state caselaw that applies the access to one's own medical records to state agencies. WSH is a state agency (per statute). Further, I believe there is caselaw applying RCW

70.02 specifically to WSH.

   3.4. NON-DISCRETIONARY. My right
to my own medical records is an equal protection
claim because it is not a discretionary decision.
It is not a discretionary decision because:
   (i) I have the right to my own medical
records unless the criterion in RCW 70.02.090 are
claimed by the facility or provider. This per se
mandate is stated in RCW 70.02.080(e). None
of the criteria in .090 were claimed or mentioned
in the censoring of my own medical records by the
defendants.
   (ii) Even if a determination of whether or
not I fit the criteria or elements in .090 could
be construed as discretional, none of these criterion
were claimed, or even implied, by the defendants,
thus it wasn't a discretion based decision.
   (iii) Plus, the fact that WSH provides access to
others — irregardless of statute interpretation — they
did not weigh any discretion compared to them or me.
Their policy refers to the statute for the reasons they
may deny a person access to their records. (It should
be noted that they did not complain about the drafting
of my own confidentiality waiver, nor tell me to use any
form, or that any particular form existed.) (Further,

I obtained the policy at a later time from Disability Rights Washington.)

(iv) My right to access my own records is mandatory and nondiscretional at this juncture, until and only until, the criteria in .090 are claimed. I was not treated equally with this statute because the censorship was not based on any of the criteria.

3.5. DIFFERENT TREATMENT. My treatment was different because others get access to their own medical records and I did not.

3.6. INTENTIONAL. There are sufficient facts to prove the discrimination was intentional because:

(i) I had written several letters indicating that I wanted the medical records and had a right to them. Dated 3/24/18, 9/26/17, 6/19/17, and one I forgot to date after I was denied access. Further, I think I wrote but I can't find them in my folder. So it could not of been accidental because (1) I was specific, and (2) there was numerous times.

(ii) Heurtas specifically stated Heurtas was censoring them. (Letter dated August 30, 2017).

(iii) In the 3/24/18 letter (appeal) I specified specifically and concisely that I wanted the medical

records and that I had a right to them.

(iv) Also, in the undated letter I specified that I had a right to the records. And these positions have training in records per Statute.

3.8. <u>INJURY</u> I suffered the injury of not enjoying this benefit. I suffered the lack of my records and the ability to use them in my current treatment for mental health unit and am diagnosed with schizophrenia, PTSD and other disorders.) I suffered being treated unfairly.

## Count 4

4.1. My right to free speech was violated because a John Doe from the prison - Monroe Correctional Complex Special Offenders Unit (MCC-SOU) - censored and restricted mail from the above defendant Ms House (DSHS) regarding the records above without a logical nexus to a legitimate penological interest.

4.2. On 8/30/19 I received a letter from Ms. House dated 8/24/18 that indicated that the prison had sent the mail she sent me back to her.

4.3. The prison had sent back a letter for me dated 8/13/18. The letter was her answer to my complaint about the records in Counts 1-3 above. It listed what she put on a disc and explained ~~more~~ some redactions. (I received this letter from her on 8/30/18, after she sent it again with her 8/24/18 letter.)

4.4. There is nothing conceivable as a penological interest. It contains no information about anyone else. It is very dry and is a cover letter.

4.5. Speech restrictions are an injury.

## Count 5

5.1. My right to procedural due process was violated because I did not receive notice of mail censorship due to a prison policy or practice.

5.2. On 8/30/18 I was notified by a letter from Defendant House that the prison had sent her back the mail she sent me. But, I had not received a notification from DOC that the mail was censored.

5.3. Sgt. Tuggle admitted in my appeal on 8/31/18 that I was not given a rejection notice. Lee Stemler (the Grievance Coordinator) told me in writing, dated

9-4-18, that the mail did not require a notice per policy because it was unauthorized mail and was not official "rejected". This is an admission to the policy or practice element.

5.4. Ms. Stemler's writing implies she communicated with the mailroom staff because she stated "your mailed was not officially "rejected"". She would of not known that if she did not talk to the mailroom because I did not provide that information "not officially rejected". I had said I did not receive notice and opportunity to appeal.

5.5. This response from Ms. Stemler then went on to explain that DOC Policy 450.100 did not require a rejection notice because it was mail that contained a CD. It indicated that incoming mail restrictions are handled differently regarding notices if they contain a disc.

5.6. This is violative of due process because practice and policy does not require that inmates receive notice when mail is rejected because it contains a disc. I believe this practice or policy interpretation is only at the MCC-SOU facility, because I have received notices for discs at WSP in the past.

5.7. My injury is that I did not receive notice of rejected mail. I had no way to have it

pg 18

mailed somewhere, or appeal it, or to obtain
the written correspondence in the envelope
with the disc.

## Count 6

6.1. My constitutional right to notice
of mail rejection and have the written
correspondence even though a disc was rejected
is a failure to train claim.

6.2. This is referring to the same mail
rejections in Count 4 and Count 5. ~~These rejections~~

6.3. James Palmer and Melvin Hopkins
were responsible for supervising at Mcc-Soy mailroom.
They did not supervise by not training the mail
sorters to know that they mail sorters must
always provide mail rejection notices. It ~~also~~
is or was a practice at Mcc-Soy for mailroom
staff to not always send mail rejections, in effect
they were exercising their own discretion in ~~deciding~~
deciding which mail they would or would not give
notices on.

6.4. This was a practice because it
happened to me numerous times. It had happened
to me with outgoing mail. I also know that it

pg 19

was happening repeatedly to an inmate named Jamall Baker (I talked with about it), and he had written kites and grievances about it. I am in constructive possession of these kites and grievances. I had them emailed through a Public Records request to someone out of prison. I don't have them in my possession here at the prison, but am going to have them mailed to the court. I do have the kites I had written about my rejections without notices.

6.5 There was therefore a paper trail that shows the supervisors were aware of this repeated Constitutional Violations and did not correct it and/or administer more and proper training.

6.6. These Supervisors are also guilty of not having in place a tracking system that would of shown which staff did this violation.

6.7. Also, there was a system there that I have seen where they tape a mini notice on mail and send it back for correcting; that is on a small enough paper to fit on an envelope. They then highlight the applicable section/problem type. This may have been like what they sent to DSHS but not me.

6.8. They did not train or supervise that all mail rejections must receive notice, because the John Doe that rejected the mail did an intentional multi-step act (thus not accidental), by placing the rejection note on the DSHS envelope and mailing it back.

6.9. Roy Gonzalez and Tracy Schneider are DOC HQ Headquarters persons that train and design training for all types of mailroom staff. This was stated in the interrogatory answer from Defendant Jack Warner (MCC-SOU Superintendent), signed Sept. 30, 2020.

6.10. Gonzalez and Schneider did not design (or caused to be designed) training methods that trained the MCC-SOU mail staff to know that it is 100% mandatory — not discretional — to give mail rejection notices to the inmate.

6.11. Neither did Gonzalez and Schneider design a method to ensure they were trained or supervised sufficiently. And they did not have a policy that tracked mail ~~rejection~~ rejector persons, so it could be determined who did the rejection without a notice to me. Defendants still have not disclose who was working the mail

sorting when my rejection without a
notice occured, and neither have they
disclosed who did the rejection.

6.12. The persons doing mail rejections
are required under the Constitution to provide
mail rejections, thus, they were required to be
a adequately trained and supervised.

6.13. Defendants have claimed in
discovery and dispositive motions that the
failure to provide me with a rejection notice
was accidental ~~and, there is no evidence, probably~~
But, it was not accidental because
it was a multiple step process for the defendants
to attach a notice to the envelope they mailed
back to DSHS. And it was a different method
than is required because they are suppose to
save a copy of notices, ~~and~~ and I requested
a copy thru discovery and the Public Records Act,
and they didn't have it preserved, so, it is
not a situation where my copy or a rejection
was filled out and just not sent to me.
Thus, there is sufficient facts that the
person (John Doe) who did the rejection without
my notice understood that it wasn't necessary
to provide me with a notice. Thus, is wrong

pg 22

understanding would be the product of not
being adequately trained and supervised in a
very simple constitutional mandate of non-discretionally
and always providing rejection notices.

6.14. The injury is that I did not
receive the paper portion (letter dated 8/13/18),
I did not receive a rejection notice for the paper
portion, and I did not receive a rejection notice
for the restricted disc. Punitive damages should
be provided because this is such obvious thing
staff should do and is simple and easy to
simply forward the inmate a copy of the
notice. ~~And the inmate~~ And the defense
should have punitive damages for malice
because of the handling of this case, they
claimed that this was accidental while simultaneously
claiming they don't know who did the rejection,
well, then how do they know it was accidental if the
person didn't tell them that? They also initially claimed
that the staff had followed policy by not providing
me a rejection, and then this contention changed
when I argued and pointed out that that actually
proved my case because I can only sue in federal
for it being caused by a policy, they wrote this in
their first answer.

6.15. I should receive costs even if I lose because defendant Lee Stemler wrote me in a grievance response and told me that it was policy for me not to receive a rejection notice, thus, this gave me grounds to sue and causally influenced my decision making believing it was extremely more likely for me to not getting stuck with the filing fee debt.

## Count 7

7.1. A supervisor did not deal with a constitutional violation.

7.2. Defendant, Natasha House, was the entity to review the censorship of my medical records in Count 1, Count 2, and Count 3. This is a supervisory position.

7.3. Ms. House completely ignored my issues about my "medical" records, and solely limited her corrective actions to emails under the State Public Records Act. Thus, Ms House, in her supervisory capacity, ignored correcting the staff's constitutional violations of speech and Equal Protection.

7.4. Neither did Ms. House forward the "medical"

records portion to another entity to supervise or review.

7.5. I suffered the injury of the ~~constitutional~~ constitutional violations in Count 1, Count 2, and Count 3. I suffered not getting the records

7.6. Defendant Ms. House is liable for post-Iqbal deliberate ~~~~ indifference to Constitutional injury. My claim is not a respondeant superior claim. But, my claim is the post-Iqbal Supervisory liability claim in _Starr v. Baca_, 652 F.3d 1202 (9th Cir. 2010). Defendant Ms. House violated both alternative elements of the standard in _Starr_.

7.7. Ms. House was [personally involved in the Constitutional deprivation] by Defendant Heurtas because Ms. House was the entity whose official job was to process a review of Defendant Heurtas denial to my request for access to my own medical records under RCW 70.02. And (1) Ms. House did not provide these records, and (2) Ms. House did not even address this part of my official appeal/review to her (but she processed other portions by providing missing emails).

7.8. And Ms. House also violated the second alternative means of the _Starr_ standard because there existed a [sufficient causal connection between

between the Supervisor's wrongful conduct and the Constitutional violation]. Ms. House [Knowingly refused to terminate a series of acts by others that [House] knew would cause others to inflict Constitutional injury] because I notified Ms. House in her [appellate or perhaps reviewing] capacity that I was not receiving my right(s) in question, and Ms. House allowed it to continue by not overruling the denial or simply providing the records.

7.9. And Ms. House is also liable under the Starr elements because [a supervisor can be held liable for [her] own inaction in the ... supervision, or control of [her] subordinates], and Ms. House did inaction specifically in her supervision and control of her specific job duty of doing/processing the appeal review of Defendant Heurtas' denial of my access to my records.

7.10. And, Ms. House was [recklessly or callously indifferent] to my rights to access my medical records because she did not provide me access to my records when it was extremely clear and obvious that I was entitled to them. It was clear that I was not being treated equally to the mandatory statute.

7.11. This supervisory liability would apply to any of the Constitutional claims regarding the medical records

statute. Defendants' attorney Dittman conceded that I stated a claim for unequal protection in his 12(b)(6) motion, thus, this supervisory liability would be intertwined with that claim.

7.12. Also, counsel Dittman objected to the freedom of speech violation, but I am opposing that because I believe that it's valid. Thus, if I prevail on that Free Speech claims then this supervisory liability would be intertwined with those claims also.

## SUPPLEMENTAL JURISDICTION CLAIMS

### Count 8

8.1. Count 1, Count 2, and Count 3 represent a violation of the State Statute to access my own medical records, RCW 70.02, (Two-year statute of limitations, 70.02.170(3)).

8.2. RCW 70.02.170 explicitly provides a cause of action. RCW 70.02.090 states the only reasons my medical records may be kept from me, and these reasons were not claimed by the defendants. RCW 70-02.080, states I may

receive my medical records.

8.3. RCW 70.02.170 states that a "provider" or "facility" is the entity to sue.

8.4. Dr. Ray Hendrickson, Ph.D and Dr. Rhana Kahn, M.D., were the providers of whom I sought the medical records. Xlomara Heurtas, was a provider in the sense that she was the entity designated to process the records on behalf of Drs. Hendrickson and Kahn.

8.5. Western State Hospital is a defendant because it is the "facility" where I requested the records.

8.6. My injury is that I did not get the records, and my costs and inconveinance of trying to obtain them by other routes. And having to sue about it and not being able to use the records in my treatment for mental health.

8.7. Dr. Hendrickson and Dr Kahn are proper defendants. For my State supplemental jurisdiction claim for failure to comply with the State statute that mandates my access to my own medical records (RCW 70.02), 70.02.170 states one of the entity types to sue is the "provider". Hendrickson and Khan are proper entities because they were the particular providers that

pg 28

wrote the records I was seeking, and, even though it was defendant Heurtas who physically processed the request, she was the entity processing the requests on <u>behalf of the providers</u> (Hendrickson and Khan).

8.8. Huertas was working on their behalf because these providers know (and agree by working at WSH) that other specific staff (records staff) process their records they are required by statute to disclose as "providers". RCW 70.02.170.

8.9. The State of Washington is a proper defendant for respondeant superior for State law claims. The State of Washington has explicitly waived eleventh amendment immunity. RCW 4.92.090. It has not waived its immunity to federal 1983 claims.

8.10. I am ~~entitled~~ naming the State as respondeant superior for State law claims— as an employer.

## Count 9

9.1. Violation of the Public Records Act for the dise of over 600 pages of emails. And

violation of speech and equality.

9.2. The statute of limitations for a PRA case is one year. This should start on 8/13/18 or later, but it is not time-barred because I filed it in Pierce County Superior Court prior to the ~~final~~ deadline in Cause No. 18-2-12548-6. And I wish to transfer that claim to this case for supplemental jurisdiction.

9.3. Xlomara Heurtas, Western State Hospital, and the State of Washington are liable for PRA violations, because Heurtas processed it while working at Western State Hospital (a State Agency) when they were WSH records, and Washington has explicitly waived immunity to be sued for PRA violations.

9.4. This Count 9 is regarding the 632 pages of emails that were withheld, the afore-mentioned medical records and this PRA record were processed together. And this is also a violation of speech and equal protection for the same ~~reasons~~ reasons as Count 1, Count 2, and Count 3. And because, they were censored without a legitimate penological interest.

9.5. They violated equal protection because the

42, 56 PRA statute was not applied equally because Huertas withheld the records without citing a statutory exemption, which is mandatory because statutory exemptions must be claimed; and, records must be provided unless and only unless a statutory exemption is claimed.

9.6. This also violates equal because I was not provided notice that they were withheld and the statute mandates that an exemption log and reasons be provided.

9.7. I did not find out that they were withheld until I got a letter from DSHS stating there was 637 pages. This is ~~different~~ different than my knowledge because I had appealed on the facts that it was missing some emails because I had a memory of perhaps 20-50 pages of emails from my ~~trial~~ criminal trial discovery that were not this PRA request (which only had 3 or 4 pages). But the appeal produced disclosure of a large amount of 637 pages, which is extremely a lot more emails that I was aware of because I only knew of ~~the~~ maybe at most about 50 pages (probably less).

9.8. Both intentional and inadequate searches

for records constitute 'bad faith', in Washington, which requires an extra element of bad faith because I am an inmate, for damages. Thus, this is bad faith because its hard to miss 637 pages when conducting an adequate search. And because the appeal persons found more than I had known existed. They had searchable computers for this and emails are electronically stored. Plus, WSH ignored my correspondence after the incomplete disclosure, it was not until I appealled to DSHS, Defendant Natasha House that any response was provided.

9.9. Also, it is evidence of bad faith because false facts were provided to the Assistant Attorney General, Jennifer Steele, because Ms. Steele, wrote me and said that my records that were withheld were only redactions made on the emails, but, this is false because my personal medical records were withheld also. Thus, there was concealment and evasion with my entire request in general.

9.10. I suffered the injury of not getting records, violation of speech and equal protection, and violating the PRA -

9.11. Tolling of the Statute of Limitations

for Public Records Act Claim. I am contending that the statute of limitations should be tolled pursuant to the 'concealment' prong of RCW 4.16.180. The facts ~~support~~ support a finding that the defendant(s) concealed from service because:

    1) I had tried to obtain their address to serve them at and they would not provide it.

    2) This also constitutes concealment because they were required to provide the address because I had requested it under the mandatory Public Records Act (PRA) and they violated this statute (RCW 42.56, Public Records Act) in order to not provide ~~their~~ their address for service. I ~~also~~ had worded it properly for the PRA because I had requested a record with the address on it that they are to be served at.

    3) I did this through written correspondence 10/2/2018. I have corroborating evidence that I did this because I got ~~this~~ correspondence from Disability Rights Washington talking about how I ~~w~~ was having trouble ~~about~~ getting the address to serve them at

pg 33

(dated 9/10/2018 by Kimberly Mossolf.) And
it is also corroborating that I wrote the
Superior Court in Pierce County for an
extension because the defendant(s) was
refusing to give me the address to serve
them at. (Served by mail on 1/31/2019).
I stated this in the motion.

4) I also have evidence under the
doctrine of probabilities to support their
refusal to respond with their address was not
a mistake under FRE 404(b). The evidence
is that they did not respond to two other
letters that I had wrote to WSH public records
complaining about not receiving things I ~~request~~
requested regarding this same PRA request. And,
also, they did not tell me that they had
withheld over 600 pgs of my request, which
shows their lack of responding when they are
required to by statute (Rcw 42.56) to not
be mere accident.

5) This is also bad faith for 'equitable
tolling' ~~it~~ because they were so severely in bad
faith that they even violated the PRA statute ~~again~~
again to stop me from obtaining their address
where they accept service at. In Washington State

pg 34

bad faith of the opposing party can qualify for equitable tolling.

6) Also, as a note when I filed this federal lawsuit I was not aware that the State suit in Pierce County, No. 18-2-12548-6, had been dismissed because I had never received the order of dismissal, and I had submitted a motion for a continuance of the 2/22/19 hearing where the Court had dismissed the case. Plus, I never received an order or response regarding my motion for a continuance that I filed by mail on 1/31/2019.

7) Also, as a note, in addition to not knowing that the State case was dismissed I perhaps had misinterpreted a different tolling statute, RCW 4.16.170. I had thought a caselaw interpretation of this statute meant that I had 90 days past the statute of limitations to get it served if I had filed it before the statute of limitations, and especially because I did not know it was dismissed. Perhaps I may of been in a legal error about being able to transfer the case to federal court in this situation (assuming it was not dismissed).

8) I previously did not state the facts for tolling for ~~the~~ the concealment statute above (RCW 4.16.180), and the equitable tolling standard because I did not know the Pierce County case was dismissed so I did not have sufficient reason to conclude it was relevant to state facts for these tolling standards.

## Addendum And Typo Correction

In my initial complaint I made a typo, then wrote a preacipe to fix the typo. I have the same typo above because I had copied the initial complaint when writing this amended complaint.

The typo has to do with the dates of my appeals for my mail rejections. A copy of these appeals are attached at pg 11 and pg 12 of my "Motion To Extend Discovery Deadline" e-filed on or about 7/2/2020.

The dates of my mail rejection appeals are:

1st level appeal: 8/27/18 by me; response dated 8/28/18
Final 2nd level appeal: 8/30/18 by me; response dated 8/31/18
(both responses by Defendant Melinda Tuggle)

## IV. RELIEF

*State exactly what you want the Court to do for you. For example, you may be seeking money damages from an individual defendant, you may want the Court to order a defendant to do something or to stop doing something, or you may want both kinds of relief. Make no legal arguments. Cite no cases or statutes.* Costs; $200,000 seperately and jointly for applicable state and federal violations, and applicable punitive and/or compensatory damages (but not for mental in federal claims), but mental in state claims, $100 a day for PRA violations 42.56.

## V. SIGNATURE

*By signing this complaint, you represent to the Court that you believe the facts alleged to be true to the best of your knowledge, that you believe those facts show a violation of law, and that you are not filing this complaint to harass another person or for any other improper purpose.*

3/16/2021
Dated

Plaintiff's Signature

Joshua Lambert
Plaintiff, Pro Se

E-FILE DOCUMENT

**E-FILE DOCUMENT**

807036 Lambert, Joshua
BC 3121L

pg 15

Hon. Robert J. Bryant

United States District Court For The Western
District of Washington

| Joshua D. Lambert, | No. 3:19-cv-05980 |
| Plaintiff, | |
| vs. | Declaration of Inmate |
| Xlomara Huertas, et al, | Mailbox Filing |
| Defendants, | Noted for deadline: 3/19/21 |

On 3/18/2021 I gave the amended complaint due
3/19/21 to staff in office per proper WSD BAR
Unit protocol, with proper forms for e-filing, I
followed policy for e-filing legal mail.

I declare under the penalty of perjury of the
United States that the foregoing is ~~true~~
true.
Date: 3/18/21

Joshua D. Lambert
Plaintiff, Pro Se.

pg 1 of 1