UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSHUA D. LAMBERT,

    Plaintiff,

v.

XIOMARA HUERTAS,[1] *et al.*,

    Defendants.

CASE NO. 3:19-cv-05980-RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR: October 22, 2021

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and local Magistrate Judge Rules MJR1, MJR3, and MJR4.

Plaintiff, who is incarcerated at the Washington State Penitentiary ("WSP") and proceeds *pro se*, brings suit against the State of Washington, the Western State Hospital ("WSH"), and various staff and officials who work for the Department of Corrections ("DOC"), the Monroe

---

[1] This defendant, formerly known as Xiomara Huertas, states that her name is now Xiomara Crockett. Dkt. 139, at 1. However, for purposes of this matter, the Court will refer to her by her former last name.

REPORT AND RECOMMENDATION - 1

Corrections Center, the Department of Social and Health Services ("DSHS"), and WSH. Plaintiff asserts constitutional and state law claims related to first, the failure to provide medical records from plaintiff's time at WSH in 2012 and second, an incident in which an unknown MCC staff member wrongly returned plaintiff's incoming mail without providing plaintiff a rejection notice.

The WSH defendants and the DOC defendants have moved for summary judgment dismissal of plaintiff's claims. (Dkts. 135, 138) Their motions should be granted. Regarding claims against the DOC defendants, the Eleventh Amendment bars claims for damages against those defendants, so those claims should be dismissed. Regarding WSH's failure to provide plaintiff's medical records, plaintiff speculates that a record exists because he watched a doctor take notes in 2012. But this does not amount to evidence from which a finder of fact could conclude that WSH had the doctor's notes in its possession in 2017 and intentionally refused to turn them over to plaintiff in a manner that amounted to an Equal Protection violation. Regarding the failure to give plaintiff notice of rejected mail, plaintiff has failed to provide evidence that any of the defendants named in this suit personally participated in this action or should be held liable for the rejection. Therefore, plaintiff's constitutional claims should be dismissed with prejudice. The Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and should dismiss those claims without prejudice.

## BACKGROUND

### I. Allegations of the Operative Complaint

In the operative complaint, plaintiff brings nine claims against defendants.

His first, second, third, seventh, eighth, and ninth claims refer to the allegedly wrongful withholding of records that he requested from WSH, where he was formerly housed. He alleges

that on August 30, 2017, defendant Huertas ("WSH's public records person") refused to provide medical records to plaintiff upon his request and in violation of a portion of Washington's Uniform Health Care Information Act ("UHCIA"), RCW 70.02.080. Dkt. 128, at 8. He also alleges that in August and September 2018, defendant Natasha House (the DSHS Public Records Officer), also refused to provide the records. Dkt. 128, at 9–10. He claims that defendants Huertas and House thereby violated his rights of free speech and to equal protection. *See* Dkt. 128, at 9–16. In his seventh claim, he alleges that defendant House is liable in a supervisory capacity. Dkt. 128, at 24. And in his eighth and ninth claims, he asserts that these actions violated the UHCIA and the Washington Public Records Act (ch. 42.56 RCW) and asserts claims against defendants Ray Hendrickson and Rhana Kahn, the medical providers from whom plaintiff sought the records, as well as defendants House and Western State Hospital. Dkt. 128, at 27–28.

Plaintiff's fourth, fifth, and sixth claims pertain to the allegedly wrongful return of the CD containing his records request and cover letter sent by defendant House in August 2018, which the unknown staff member rejected without notice to plaintiff. Dkt. 128, at 16. Plaintiff does not name a defendant for his fourth or fifth claims but asserts that his right to free speech and to procedural due process was violated by this action. Dkt. 128, at 16. Plaintiff's sixth claim appears to be against James Palmer, Melvin Hopkins, Roy Gonzalez, and Tracy Schneider—all persons who plaintiff claims are responsible for failing to train the MCC mail staff appropriately. Dkt. 128, at 21.

Plaintiff seeks damages and costs. Dkt. 128, at 38.

///

///

## II. Summary Judgment Motions

### A. Defendants' Motions and Evidence

Pertinent to the pending motions and plaintiff's records request from WSH, the WSH defendants provide defendant Huertas's declaration describing WSH staff's interpretation of and response to plaintiff's records request in June 2017. According to defendant Huertas, plaintiff requested that his records be sent to an email that he designated and, on June 30, 2017, staff sent responsive records to that email address. Dkt. 139, at 2. However, in response to plaintiff's request for certain records from defendant Hendrickson, staff wrote that they could not locate "anything by Dr. Hendrickson for January 2012." Dkt. 139, at 2. Defendant Huertas also responded separately by mail to plaintiff's request for emails related to his time at WSH. Dkt. 139, at 3. She mailed three pages of records with redactions. Dkt. 139, at 3.

Related to the later rejection of plaintiff's incoming mail without notice, defendants Melinda Tuggle, Lee Stemler, Jack Warner, and Tracy Schneider disavow any involvement with the rejection of plaintiff's incoming mail (specifically, the rejection of a CD with additional responsive records) without notice. Dkt. 59, at 1; Dkt. 61, at 1; Dkt. 62, at 1; Dkt. 63, at 1–2. Defendant Stemler, who reviews grievances, and defendant Tuggle, a mail processing driver, acknowledge that they assisted plaintiff with his kites and processed plaintiff's grievance about this issue. Dkt. 62, at 1; Dkt. 63, at 1–2. Defendant Schneider states that she oversees mailroom operations for DOC and that staff should have given plaintiff a mail rejection notice. Dkt. 59, at 2. Defendant Schneider also states that she has "never heard of" plaintiff until this case and that neither she nor her predecessor, defendant Roy Gonzales, would have trained DOC staff to reject an envelope containing a public records CD without a mail rejection notice. Dkt. 136, at 2.

1      Based on this evidence, defendants seek dismissal of all of plaintiff's claims in this
2 lawsuit.  Dkts. 135, 138.  With their summary judgment motions, they filed notices advising
3 plaintiff that if the Court grants their motions, some or all of his claims would be dismissed
4 without trial.  *See* Dkts. 137, 142.

5                             **B.  Plaintiff's Responses and Evidence**

6      Plaintiff has provided a variety of declarations and other submissions.  Regarding the
7 mail rejection, plaintiff asserts that this is not an isolated incident, but that other prisoners have
8 told him about having mail returned without notice at MCC and that he has had similar problems
9 while incarcerated at the WSP.  *See* Dkt. 77, at 4–6; *see also* Dkt. 77-1, at 33 (declaration from
10 another prisoner at WSP).  In his responses to the pending summary judgment motions, he
11 generally argues that the person who rejected his mail was improperly trained and did not follow
12 policy.  *See* Dkt. 143.  He also argues that he has created genuine issues of material fact related
13 to whether defendant Hendrickson's notes existed and WSH withheld them.  Dkt. 149, at 2.

14                                       **DISCUSSION**

15     **I.  Legal Standard**

16     Summary judgment is appropriate if a moving party shows that "there is no genuine
17 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.
18 R. Civ. P. 56(a).  The materiality of a given fact is determined by the required elements of the
19 substantive law under which the claims are brought.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
20 242, 248 (1986).  Factual disputes that do not affect the outcome of the suit under the governing
21 law will not be considered.  *Id.*

22     Where there is a complete failure of proof concerning an essential element of the non-
23 moving party's case on which the nonmoving party has the burden of proof, all other facts are

24

1 | rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*
2 | *Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the
3 | evidence presented through the prism of the substantive evidentiary burden"). However, when
4 | presented with a motion for summary judgment, the court shall review the pleadings and
5 | evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation
6 | omitted), and "a pro se complaint will be liberally construed. . . ." *Pena v. Gardner*, 976 F.2d
7 | 469, 471 (9th Cir. 1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation
8 | omitted).

9 | Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing
10 | the motion must do more than simply show that there is some metaphysical doubt as to the
11 | material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The
12 | opposing party cannot rest solely on his pleadings but must produce significant, probative
13 | evidence in the form of affidavits, and/or admissible discovery material that would allow a
14 | reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249–50. However,
15 | weighing of evidence and drawing legitimate inferences from facts are jury functions, and not
16 | the function of the court. *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d
17 | 1539, 1542 (9th Cir. 1989).

18 | Because plaintiff is *pro se*, all of his contentions in motions and pleadings that are made
19 | under penalty of perjury, based on personal knowledge, and set forth facts that would be
20 | admissible in evidence will be considered in ruling on the motions for summary judgment. *See*
21 | *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).
22 | ///
23 | ///
24 |

REPORT AND RECOMMENDATION - 6

## II. Issues Common to Both Motions

At the outset, the Court recommends dismissal with prejudice of any claims for constitutional violations that plaintiff seeks to bring against the State of Washington or agencies thereof, since the Eleventh Amendment bars those claims for damages. *See Pennhurst State Sch. & Hosp. v. Holdeman*, 465 U.S. 89, 101–02 (1984).

## III. WSH Defendants

### A. Claims One and Two

As noted, plaintiff's first two claims are against defendants Huertas and House for allegedly violating the First Amendment by withholding plaintiff's records relevant to his time at WSH, upon request. *See generally* Dkt. 128. The WSH defendants argue that these claims are barred because the Court has already dismissed them without leave to amend. They are correct: the Court previously rejected plaintiff's claims regarding the medical records without leave to amend, reasoning that the "First Amendment does not create a generalized right of access that can be applied in this context." Dkt. 79, at 7; *see also* Dkt. 86. Plaintiff fails to provide a reason to depart from this previous ruling. Plaintiff's first and second claims should be dismissed with prejudice.

### B. Claims Three and Seven

Plaintiff's third claim is that defendants Huertas and House violated his right to Equal Protection. His theory is that they discriminated against him as a member of a "class of one" when applying the UHCIA and withholding medical records pertaining to his two-weeks at WSH. Dkt. 128, at 10. His seventh claim is that defendant House is liable for constitutional violations in her supervisory capacity because she ignored issues about the allegedly missing medical records and limited her corrective actions to the emails. Dkt. 128, at 24.

1    In a "class of one" case, the plaintiff alleges that he has been intentionally treated
2    differently from others similarly situated and that there is no rational basis for the difference in
3    treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).
4    RCW 70.02.080, part of the UHCIA, provides that a health provider must make a
5    patient's records available within fifteen days of receiving a written request from a patient.
6    RCW 70.02.080(1). The provider must make the information available for examination and
7    provide a copy, if requested. RCW 70.02.080(1)(a); *see also* RCW 70.02.090 (providing
8    circumstances under which the provider may deny the request).

**1. WSH Defendants' Evidence**

In support of their summary judgment motion, the WSH defendants provide plaintiff's June 2017 request to WSH, which sought the following:

> 1. Dr. Rana Kahn, M.D. wrote a report about me in year 2012. Please provide me this report.
> 2. Dr. Rana Kahn, M.D. and Dr. Ray Hendrickson Ph.D. each interviewed me separately in January 2012. During these interviews they each wrote on the[ir] packed of questions (or questionnaire interview outline thing). Please provide this questionnaire with the writings the doctors put on it.
> 3. A copy of <u>all</u> emails regarding me to and from WSH staff.

Dkt. 140-1, at 2–3.

The DSHS public records officer provides her return letter of June 26, 2017, stating that she interpreted this request as seeking the following:

> 1. A copy of the 2012 report written by Dr Kahn MD on [plaintiff;]
> 2. A copy of the interview and the questionnaires filled out by Dr Kahn, Dr Hendrickson separately in January of 2012 related to [plaintiff;]
> 3. A copy of all emails related to [plaintiff] and his care from the dates of 01/01/2012 and 3/10/2012[.]

1  Dkt. 141-1, at 2. The public records officer states that she did not receive any subsequent

2  response from plaintiff correcting her or stating that her interpretation of his request was

3  incorrect. Dkt. 141, at 2.

4        Regarding the responsive records, WSH defendants provide a WSH staff member's

5  emails on June 30, 2017, to the email address provided by plaintiff, stating that he needed to

6  create a password to view the records and that the email would expire in 30 days. Dkt. 139-1, at

7  2. Another email from the same date states that it is responding to items 1 and 2 of the request:

8        The only questionnaire (Admission Psychiatric Evaluation Record) and report (Admission Psychiatric Assessment) written by Dr. Khan in 2012 is attached. I do
9        not have anything by Dr. Hendrickson for January 2012.
        The rest of your request (item #3) will be sent by Public Disclosure as we
10        do not have access to that information in HIMS (Medical Records).

11  Dkt. 139-2, at 2.

12        Defendant Huertas separately sent plaintiff a letter dated August 30, 2017, stating that she

13  was responding to plaintiff's "public records request," item 3. She stated that she attached three

14  pages of responsive records and that she included an exemption log to explain redactions. Dkt.

15  139-3, at 2.

16        Based on this information, the WSH defendants argue that they responded appropriately

17  to plaintiff's request for his health care records and for emails (with the request for emails being

18  properly treated as a request under the Public Records Act), and that plaintiff cannot show that

19  he was differently treated than anyone else making such a request.

                            **2. Plaintiff's Evidence and Arguments**

                                  **a. Medical Records**

22        Plaintiff asserts that WSH arbitrarily refused to comply with his request. Regarding the

23  requested medical records, in response to the summary judgment motion, he provides 32 pages

24

REPORT AND RECOMMENDATION - 9

of notes from defendant Hendrickson dated from 2013. Dkt. 147, at 3–18; *see also* Dkt. 149-1, at 3–17. However, these notes dated 2013 are not responsive to plaintiff's request, and plaintiff's reliance on them does not create any genuine issues of material fact related to his claims.

Plaintiff asserts that he specifically remembers defendant Hendrickson taking notes at plaintiff's January 2012 interview, so that he knows there to be additional notes that were not provided in response to his request. Dkt. 150, at 2. However, taking as true that defendant Hendrickson authored notes at plaintiff's January 2012 interview, the lack of disclosure of such notes does not amount to discrimination against plaintiff in violation of Equal Protection, as other courts within this District have also recognized:

> In this case, plaintiff [Lambert] does not allege he was treated differently due to his membership in a protected class but, rather, relies upon the "class of one" theory of equal protection. But the entire basis for plaintiff's equal protection claims appears to be that defendants violated the state laws governing public records requests. The Court notes that it has recommended the dismissal of substantially similar equal protection claims . . . raised in plaintiff's other § 1983 action, *Lambert v. McKay, et al.*, No. C19-1829-BJR. *Lambert v. McKay, et al.*, No. C19-1829-BJR, Dkt. 53. . . .
> 
> . . .
> Likewise, here, the Court finds that the equal protection claims plaintiff raises in this action appear to implicate only state law concerns. *See Jack v. Cty. of Stanislaus*, No. 1:17-CV-0520 AWI SAB, 2017 WL 4123930, at *12 (E.D. Cal. Sept. 15, 2017) (The "failure to provide public records pursuant to State law does not in and of itself implicate federal constitutional rights or protections."); *see Galen v. Cty of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) (§ 1983 does not provide a cause of action for violations of state law alone); *Houchins v. KQED, Inc.*, 438 U.S. 1, 15, 98 S. Ct. 2588, 2597, 57 L.Ed. 2d 553 (1978) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."); *Fabricius v. Tulare Cty.*, No. 1:15-CV-01779-EPG, 2017 WL 2633421, at *6 (E.D. Cal. June 19, 2017) ("[A]n alleged wrongful denial of [a public records request pursuant to the California Public Records Act] would not equate to a violation of [plaintiff's] Constitutional rights.")[).]

*Lambert v. Weller*, No. C20-1558-JLR-MAT, 2021 WL 1393066, at *3 (W.D. Wash. Mar. 16, 2021), *report and recommendation adopted*, No. C20-1558 JLR-MAT, 2021 WL 1387661 (W.D. Wash. Apr. 12, 2021).

The Court is not persuaded that plaintiff can show a violation of Equal Protection on a theory of discrimination against a "class of one" even if he could establish that a defendant failed to respond to his records request in accordance with state law. Even if the Court were to conclude that plaintiff could bring such a claim, plaintiff has failed to show that either defendant named in his Equal Protection claims (Huertas and House) acted so arbitrarily or irrationally as to give rise to a class-of-one claim. "A class of one plaintiff must show that the discriminatory treatment was intentionally directed just at him, as opposed . . . to being an accident or a random act." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (internal citations and quotation marks omitted).

Here, Michele Williams responded to plaintiff's initial request, including interpreting it, and Paula Keitzman emailed plaintiff the medical records and stated that she could not find anything by Dr. Hendrickson for January 2012. Dkt. 139-2, at 2; Dkt. 141-1, at 2. Plaintiff names neither person as a defendant in this lawsuit. Instead plaintiff names defendant Huertas, who responded to the request for emails (Dkt. 139-3). Plaintiff has not shown any facts tending to establish that defendant Huertas acted arbitrarily or unreasonably with respect to his claim for defendant Hendrickson's notes.

Plaintiff also names defendant House, who followed up on plaintiff's request in 2018. Plaintiff has provided evidence that in response to his follow up letter about the inadequacy of the records and email provided, defendant House provided 637 pages of additional records responsive to plaintiff's request and also sent those records to the physical addresses provided by

plaintiff after the initial mailing was returned. *See* Dkt. 149-2, at 35–36. Plaintiff cannot succeed on his claim of an Equal Protection violation where a rational basis for the challenged action is apparent, and here, plaintiff has not provided any evidence that defendant House would have known that defendant Hendrickson's notes existed. Notably, plaintiff's letter (which defendant House reviewed) does not specify the omission of defendant Hendrickson's notes but generally requests that plaintiff be sent records that were "denied" by defendant Huertas, that were withheld as "exempt," and the emails that were not sent. Dkt. 149-2, at 7. Moreover, the original records request authored by Keitzman indicated that no notes from defendant Hendrickson in January 2012 could be located. Dkt. 139-2, at 2. In short, plaintiff has not provided any evidence that, viewed in the light most favorable to him, could result in a conclusion that defendant House's substantial records response violated Equal Protection because she did not include Hendrickson's notes, which WSH staff previously indicated could not be located.

The Court notes that although plaintiff's complaint alleges issues with "censoring" his records, he clarifies that he is bringing claims solely related to the alleged withholding of the requested medical records. Dkt. 149, at 9. His claims should be dismissed with prejudice, for the reasons discussed above.

### C. Claims Eight and Nine

Because the Court should dismiss plaintiff's constitutional claims against the WSH defendants with prejudice, the Court should also decline to exercise supplemental jurisdiction over plaintiff's state law claims related to the alleged wrongful withholding of his records. The state law claims should be dismissed without prejudice. *See* 28 U.S.C. § 1367.

///

|   |   |
|---|---|
| 1 | **IV. DOC Defendants** |

Plaintiff's remaining claims concern the return of his mail by an unknown MCC staff member and without notice to plaintiff. Dkt. 128, at 16–19, 24. He brings these claims against individual defendants Tuggle, Stemler, Palmer, Hopkins, Gonzalez, and Schneider. This also appears to be the basis for any claims against defendant Warner.

Prisoners have a due process liberty interest in receiving notice that incoming mail is being withheld by prison authorities. *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999).

### A. Defendants' Evidence

Defendant Schneider, the DOC correctional manager and person who oversees mailroom operations and mail operations policies, provides her declaration. Dkt. 59. She states that returning plaintiff's public records CD to the sender without providing a mail rejection notice is wrong, under the DOC mail policy. Dkt. 59, at 2. At the time of the events at issue, defendant Schneider was a "Corrections Specialist 3," who assisted with the duties she now performs. Dkt. 59, at 1. Defendant Schneider also states that defendant Gonzalez no longer works for DOC but held a similar position to Schneider and never trained mailroom employees to return an envelope containing a public records request CD without a rejection notice. Dkt. 136, at 2.

Defendants Warner and Tuggle also provide declarations stating that they did not know that plaintiff's mail had been returned without a notice until plaintiff raised his concerns and that they did not handle that piece of mail. Dkt. 61, at 1–2; Dkt. 62, at 1–2. Defendant Warner explains that he supervises the Special Offender Unit in the MCC and does not supervise mailroom employees. Dkt. 61, at 1. Defendant Tuggle states that she is a mail processing driver at MCC (processing first class mail only, not large envelopes) and that in response to plaintiff's

1 kites about his mail, she could find no record of any rejection. Dkt. 62, at 1–2. She does not
2 know who rejected the mail. Dkt. 62, at 1–2.

3       DOC staff who handled plaintiff's grievances also provide their declarations. Defendant
4 Stemler, a corrections specialist 2 at MCC, states that she reviewed plaintiff's grievance about
5 his mail rejection and responded to it. Dkt. 63, at 2. Defendant Stemler's response to plaintiff
6 states that plaintiff's CD with his public records request documents was "not officially 'rejected'
7 and therefore under DOC Policy . . . did not require a rejection notice to you." Dkt. 63-1, at 2.
8 Defendant Stemler states that plaintiff did not appeal this response. Dkt. 63, at 2.

9       Based on this evidence, defendants argue that plaintiff cannot prevail on his
10 constitutional claims related to the return of his mail without notice because he has not named
11 any defendant who actually participated in that action and because whichever staff member took
12 that action did so by mistake.

13                     **B. Plaintiff's Evidence and Arguments**

14       For his part, plaintiff argues that the Court should not allow defendants to claim that the
15 rejection of his mail was a "mistake" because they can provide no evidence to establish this.
16 Dkt. 143, at 1. He asserts that "a reasonable juror could infer that it was not a mistake" but was
17 an intentional act to reject his mail. Dkt. 143, at 8. As noted, he also asserts that it was improper
18 to reject the cover letter accompanying his CD, even if policy required returning the CD to the
19 sender. But setting aside whether or not the person who rejected plaintiff's mail without notice
20 did so intentionally (and whether they thereby violated the First or Fourteenth Amendments),
21 plaintiff has separately failed to provide evidence that any of the named defendants personally
22 participated in the mail rejection. Plaintiff has failed to come forward with evidence that any of
23 the named defendants affirmatively rejected his mail without notice or that they participated in
24

REPORT AND RECOMMENDATION - 14

that rejection without notice. *See Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007). He has also failed to come forward with evidence that any defendants knew this mail was rejected without notice but failed to act to prevent this.

A defendant cannot be held liable on the basis of supervisory liability in a § 1983 claim. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted) ("A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."). The Supreme Court has held that a lack of sufficient training may be a basis for a claim against a government official under § 1983. *See Canton v. Harris*, 489 U.S. 378, 388 (1989). But failure to train can only be a basis for such a claim "where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officials] come into contact." *Id.* Deliberate indifference requires that a person have knowledge of a particular risk and then recklessly disregard it. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The failure to train must be a "deliberate" or "conscious" choice in order for it to give rise to liability. *Canton*, 489 U.S. at 388. Plaintiff has not provided facts from which a trier of fact could conclude that any of the DOC defendants knew of the alleged mailroom issues and failed to correct them, as required to show deliberate indifference.

Plaintiff has, in a prior declaration, asserted a pattern and practice of mail being returned without notice at the MCC. *See* Dkt. 77, at 3–6. However, he has not provided any evidence that could lead a trier of fact to conclude that defendants Schneider or Gonzalez were aware of issues at the MCC before plaintiff had his mail returned. His evidence from another institution is not adequate to show a pattern or practice related to MCC mailroom employees. *E.g.* Dkt. 66-1, at 33; *see also* Dkt. 76, at 8 (explaining that plaintiff's claims are not related to DOC as a whole

but "the manuals/protocol/etc. peculiar to MCC").  Indeed, he affirmatively states that he is unaware of anything to indicate that defendant Schneider (a DOC official) "has anything to do with rejections at the prisons[.]" Dkt. 78, at 9.

Nor has he provided any evidence from which a trier of fact could conclude that the other defendants against whom he brings these claims had authority to train MCC mailroom employees. Plaintiff asserts that defendant Tuggle has "supervisor[y] liability" over the MCC mailroom, but plaintiff has not provided facts based on personal knowledge that are adequate to create a genuine issue of material fact in the face of Tuggle's own declaration that she is not the MCC mailroom supervisor. *See* Dkt. 76, at 9 (stating that someone else "told" plaintiff that Tuggle was the supervisor). And although defendants Stemler and Tuggle responded to grievances or kites about the mail issue, plaintiff provides no evidence that they somehow were a part of the initial mistake. *Cf. Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (rejecting liability for a staff member who merely signed a grievance).

Plaintiff has also come forward with no evidence contradicting defendant Warner's statements that he does not supervise the MCC mailroom and was unaware of plaintiff's issues before the lawsuit. Dkt. 61, at 1.

Finally, plaintiff's responses to the summary judgment motions fail to identify any evidence from which a trier of fact could find defendants Palmer or Hopkins liable. *See Celotex Corp.*, 477 U.S. at 323 (explaining that where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law).

1    Plaintiff also argues that it is a reasonable inference that a lack of training caused the
2 rejection without notice because it was "grossly against policy" and because defendants are
3 "hid[ing]" the name of the rejector.  Dkt. 143, at 9.  But section 1983 requires more than mere
4 speculation to establish a constitutional violation.  In addition, plaintiff asserts that there are
5 discovery responses from defendants indicating that they are, in fact, responsible for training and
6 policies.  Dkt. 143, at 11; Dkt. 144, at 5.  Plaintiff refers to defendants' answer, which contains
7 the general assertion that they were "act[ing] pursuant to published policies and field
8 instructions."  Dkt. 40, at 3.  But references to general denials and conclusory responses in
9 interrogatories and answers to a complaint are the types of statements that are insufficient to
10 create genuine issues of material fact on summary judgment.  *See FTC v. Publ'g Clearing*
11 *House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.1997) ("[A] conclusory, self-serving affidavit, lacking
12 detailed facts and any supporting evidence, is insufficient to create a genuine issue
13 of material fact[.]").  For these reasons, plaintiff's constitutional claims against the DOC
14 defendants should be dismissed with prejudice.  To the extent that plaintiff brings state law
15 claims under the Court's supplemental jurisdiction, the Court should dismiss those claims
16 without prejudice.

17    **IV.  *In Forma Pauperis* on Appeal**
18    The Court recommends revoking plaintiff's *in forma pauperis* ("IFP") status for purposes
19 of appeal.  IFP status on appeal shall not be granted if the district court certifies "before or after
20 the notice of appeal is filed" "that the appeal is not taken in good faith[.]"  Fed. R. App. P.
21 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3).  A plaintiff satisfies the "good faith" requirement if
22 he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any
23 arguable basis in law or fact.  *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v.*
24

1 *Williams*, 490 U.S. 319, 325 (1989). An appeal from this matter would lack an arguable basis in law or fact, and IFP status should be revoked for any appeal.

## CONCLUSION

The undersigned recommends that defendants' summary judgment motions be granted (Dkts. 135, 138), that plaintiff's federal claims be dismissed with prejudice, that plaintiff's state law claims be dismissed without prejudice, and that this matter be closed. IFP status should be revoked for any appeal.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **October 22, 2021** as noted in the caption.

Dated this 4th day of October, 2021.

J. Richard Creatura
Chief United States Magistrate Judge